**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL MARTIN GALLUCCIO,<br><br>         Plaintiff,<br><br>   v.<br><br>NANCY A. BERRYHILL,[1] Acting<br>Commissioner of Social<br>Security,<br><br>         Defendant. | CASE NO. CV 17-0409 SS<br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

Daniel Martin Galluccio ("Plaintiff") brings this action seeking to overturn the decision of the Acting Commissioner of Social Security (the "Commissioner" or "Agency") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties consented,

---

[1] Nancy A. Berryhill, Acting Commissioner of Social Security, is substituted for her predecessor Carolyn W. Colvin, whom Plaintiff named in the Complaint. See 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 7, 12, 13). For the reasons stated below, the Court AFFIRMS the Commissioner's decision.

## II.

### PROCEDURAL HISTORY

On January 15, 2013, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act alleging a disability onset date of January 31, 2013. (AR 194-201). The Commissioner denied Plaintiff's applications initially and on reconsideration. (AR 97-101, 106-11). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (AR 120-22), which took place on June 18, 2015 (AR 29-52). The ALJ issued an adverse decision on July 16, 2015, finding that Plaintiff was not disabled because he could perform his past relevant work. (AR 15-23). On December 5, 2016, the Appeals Council denied Plaintiff's request for review. (AR 1-8). This action followed on January 18, 2017.

## III.

### FACTUAL BACKGROUND

Plaintiff was born on September 21, 1952. (AR 31, 194, 196). He was sixty-two years old when he appeared before the ALJ on June 18, 2015. (AR 15). Plaintiff has a college degree. (AR 33). He

2

is married and lives with his wife.  (AR 266).  Plaintiff previously worked as a sales representative.  (AR 21-22).  He alleges disability due to: sleep apnea, asthma, obesity, high blood pressure, limited range of motion, scoliosis, arthritis, partial deafness in left ear, and depression.  (AR 266).

**A.   <u>Plaintiff's Testimony</u>**

Plaintiff testified that he is unable to work because of fatigue and an inability to focus.  (AR 39, 48).  Because of back and hip pain, Plaintiff is unable to sit for more than thirty minutes before needing to walk around.  (AR 35-36, 39-41).  He can walk for only four to five blocks before needing to rest.  (AR 36, 44).  Plaintiff also has difficulty bending and stooping.  (AR 36). Because of his sleep apnea, he gets only four to five hours of interrupted sleep.  (AR 37, 47).  Plaintiff's edema causes swelling in both feet, which he can alleviate by raising his legs.  (AR 42).

During a typical day, Plaintiff testified that he uses the computer and reads.  (AR 39).  He can make his own breakfast and is sometimes able to walk the dog.  (AR 39).  Despite his monocular vision, Plaintiff is able to drive.  (AR 38-39).

**B.   <u>Plaintiff's Statements</u>**

Plaintiff completed an Adult Function Report on May 5, 2013. (AR 266-74).  He asserted that he is unable to work due to lethargy and weakness from his sleep apnea and asthma.  (AR 266).  He suffers

from continuous back pain and limited range of motion due to scoliosis and arthritis. (AR 266). He is able to make breakfast, walk the dog, take out the trash, and do laundry and dishes, but has difficulty tying his shoes. (AR 267-68). He is able to shop for groceries, prescriptions and household goods and attends church on a regular basis. (AR 269-70). While Plaintiff asserts that his physical impairments affect his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb and hear, he is able to lift forty to fifty pounds and can walk one-half mile before needing to rest. (AR 271).

Plaintiff completed a Pain Questionnaire on May 6, 2013. (AR 277-79). He described suffering daily from dull to sharp pain in his back that sometimes spreads to his shoulder and hip. (AR 277). The pain is somewhat relieved by Advil or Motrin. (AR 277). Stretching and vibrating massages are also helpful in relieving the pain. (AR 278). Plaintiff has difficulty picking things up but can do errands, such as the grocery shopping, and use public transportation without assistance. (AR 279). He can lift up to forty pounds, walk less than a mile, stand five to ten minutes at a time, and sit fifteen to twenty minutes at a time. (AR 279). Plaintiff also completed an Adult Asthma Questionnaire. (AR 280-82). He asserted having monthly asthma attacks but denied and emergency room visits or hospitalizations for his asthma. (AR 281).

1    **C.   Plaintiff's Spouse's Statement**

2

3         On May 5, 2013, Idamary Galluccio, Plaintiff's spouse,

4    completed a Third Party Function Report. (AR 257-65). She asserted

5    that Plaintiff often dozes off and has trouble concentrating. (AR

6    257). He cannot sit for long periods. (AR 261). His physical

7    impairments affect his ability to lift, squat, bend, stand, walk,

8    sit, kneel, hear, climb and concentrate. (AR 262).

9

10        Plaintiff is able to dress, bathe, care for hair, shave,

11   feed himself and use the toilet without assistance. (AR 258). He

12   also performs household chores, including preparing meals, doing

13   laundry and dishes, walking the dog, shopping for groceries and

14   taking out trash, on a regular basis. (AR 258-60). Plaintiff is

15   able to walk, drive and use public transportation on his own. (AR

16   260). He attends church and the senior clubhouse on a regular basis

17   without assistance. (AR 261).

18

19   **D.   Treatment History**

20

21        In March 2010, Plaintiff was diagnosed with severe sleep

22   apnea, causing fatigue and depression. (AR 395); (see also AR 437)

23   (A sleep study performed in February 2014 concluded that Plaintiff

24   has "severe, non-positional obstructive sleep apnea."). In May

25

26

27

28

2010, Plaintiff reported increased energy and less fatigue while using a CPAP machine.[2] (AR 396).

On May 11, 2011, Plaintiff complained of pain in his right hip, right knee, lower back and right shoulder. (AR 393). On examination, Michael A. Samuelson, M.D., found full active range of motion with no tenderness in Plaintiff's right shoulder, full range of motion with no tenderness or swelling in the right knee, and limited range of motion in the right hip. (AR 393). Dr. Samuelson also found decreased range of motion secondary to pain in the lumbar spine. (AR 393). Nevertheless, a straight leg raise was negative with normal sensation throughout the lower extremities, and Plaintiff had full strength in his quadriceps, extensor hallucis longus,[3] and gastro soleus.[4] (AR 393). Plaintiff ambulated with a slow, guarded gait. (AR 393). X-rays indicated right hip moderate arthritis, minimal arthritic changes in the lumbar spine and knees, and a normal right shoulder. (AR 393). Dr. Samuelson assessed bilateral knee and right hip osteoarthritis, lumbar degenerative disc disease and right shoulder impingement.

[2] "Continuous positive airway pressure (CPAP) therapy is a common treatment for obstructive sleep apnea. A CPAP machine uses a hose and mask or nosepiece to deliver constant and steady air pressure." <https://www.mayoclinic.org/diseases-conditions/sleep-apnea/in-depth/cpap/art-20044164> (last visited Nov. 29, 2017).

[3] "The extensor hallucis longus muscle extends the foot's big toe." <https://www.healthline.com/human-body-maps/extensor-hallucis-longus-muscle> (last visited Nov. 29, 2017).

[4] The gastro soleus is one of several muscles that flex the leg at the knee "in addition to assisting propulsion and stabilisation [sic] during the actions of walking, running and jumping." <http://www.musclesused.com/gastrocnemius-soleus-calf-muscles/> (last visited Nov. 29, 2017).

(AR 393). He recommended that Plaintiff undergo a lap band procedure to address Plaintiff's obesity. (AR 393).

On January 9, 2013, Plaintiff complained of back pain, leg swelling and insomnia. (AR 312). Jimmy Soliman, M.D., diagnosed sleep apnea, morbid obesity, scoliosis, degenerative joint disease, asthma and leg edema. (AR 312). Dr. Soliman increased Plaintiff's Maxide[5] dosage and recommended regular exercise, leg elevation and weight loss. (AR 313).

On June 1, 2013, John Sedgh, M.D., reviewed the medical record and performed an internal medicine consultative examination on behalf of the Agency. (AR 414-19). Plaintiff reported that his sleep apnea is improved with the use of a CPAP machine, although he still experiences some sleepiness during the day. (AR 414). He uses an inhaler for his asthma but experiences shortness of breath after walking a couple blocks. (AR 414). Plaintiff complained of pain in his mid to lower back with radiation to his hip but denied needing an assistive device. (AR 414).

On examination, Dr. Sedgh found normal range of motion in the cervical spine, shoulders, elbows, wrists, hips, knees and ankles. (AR 416-17). The range of motion in the lumbar spine was limited with flexion at 65/90 degrees, extension 15/30 degrees and lateral flexion at 20/30 degrees. (AR 416). A straight-leg-raising test

---

[5] Maxide, a common misspelling of Maxzide (hydrochlorothiazide), "is used to treat fluid retention (edema) and high blood pressure (hypertension)." <http://www.musclesused.com/gastrocnemius-soleus-calf-muscles/> (last visited Nov. 29, 2017).

was negative. (AR 416). Plaintiff had full motor strength in all extremities but mild to moderate edema in his lower extremities. (AR 417). Dr. Sedgh's clinical impression included hypertension, sleep apnea, asthma, scoliosis of the back and hearing loss. (AR 418). He opined that Plaintiff is capable of performing a range of work at the medium exertional level subject to environmental and postural restrictions. (AR 418). Plaintiff's kneeling, crouching and stooping should be limited to frequent. (AR 418).

On July 23, 2013, V. Phillips, M.D., a nonexamining state agency consultant, reviewed the medical record and completed a Disability Determination Explanation statement. (AR 53-64). Dr. Phillips concluded that Plaintiff is capable of performing a limited range of medium work. (AR 61-62). Plaintiff is limited to frequent climbing, balancing, stooping, kneeling, crouching and crawling and should avoid concentrated exposure to extreme cold and extreme heat. (AR 62). On December 2, 2013, B. Vaghaiwalla, M.D., another nonexamining state agency consultant, affirmed Dr. Phillips's findings. (AR 79-86).

Farhad Contractor, M.D. performed X-rays of Plaintiff's thoracic and lumbar spine on May 2, 2014. (AR 457-58). The X-rays revealed degenerative and arthritic changes at L5-S1 and degenerative changes at T12-L1, with no nerve impact evident. (AR 457-58). Dr. Contractor's clinical impression included degenerative disc disease, lumbar spondylosis, facet arthritis at L5-S1 and rotatory scoliosis due to muscle spasm. (AR 458).

Primary care records during May and June 2014 indicated no significant functional limitations and conservative treatment. (AR 440-52). On May 30 and June 12, 2014, Plaintiff denied fatigue, joint pain, joint swelling, muscle pain, muscular weakness, limited range of motion and muscle cramps. (AR 445, 447).

On December 17, 2014, Gerald W. Cara, M.D., conducted an orthopedic examination. (AR 460). Plaintiff complained of lumbar spine pain and stated that he has sleep apnea. (AR 460). On examination, Dr. Cara found Plaintiff to be morbidly obese, with marked restriction of motion in the lumbar spine, pitting edema in the lower extremities and areflexic deep tendon reflexes. (AR 460). Dr. Cara recommended that Plaintiff be further evaluated with an MRI study. (AR 460). On January 15, 2015, Patricia Kincaid, M.D., performed an MRI of Plaintiff's lumbar spine. (AR 461-62). Dr. Kincaid's clinical impression included mild-to-moderate degenerative changes at L4-S1, with 2-3mm disc protrusions causing mild canal stenosis and minimal foraminal narrowing. (AR 462). On the basis of the MRI study, Dr. Cara recommended that Plaintiff be referred to a spine surgeon (AR 459), but the record documents no further treatment.

## IV.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful

9

activity and that is expected to result in death or to last for a continuous period of at least twelve months. <u>Reddick v. Chater</u>, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2)   Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4)   Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5)  Is the claimant able to do any other work?  If not, the
        claimant is found disabled.  If so, the claimant is found
        not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari,
262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-
(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four
and the Commissioner has the burden of proof at step five.
Bustamante, 262 F.3d at 953-54.  Additionally, the ALJ has an
affirmative duty to assist the claimant in developing the record
at every step of the inquiry.  Id. at 954.  If, at step four, the
claimant meets his or her burden of establishing an inability to
perform past work, the Commissioner must show that the claimant
can perform some other work that exists in "significant numbers"
in the national economy, taking into account the claimant's
residual functional capacity ("RFC"), age, education, and work
experience.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at
721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner
may do so by the testimony of a VE or by reference to the Medical-
Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P,
Appendix 2 (commonly known as "the grids").  Osenbrock v. Apfel,
240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both
exertional (strength-related) and non-exertional limitations, the
Grids are inapplicable and the ALJ must take the testimony of a
vocational expert ("VE").  Moore v. Apfel, 216 F.3d 864, 869 (9th

Cir. 2000) (citing <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**V.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 22). At step one, the ALJ found that Plaintiff met the insured status requirements through September 30, 2017, and had not engaged in substantial gainful activity since January 31, 2010, the alleged disability onset date. (AR 16). At step two, the ALJ found that Plaintiff's lumbar spondylosis, herniated discs at L4-5 and L5-S1 with stenosis, morbid obesity, obstructive sleep apnea, hypertension, asthma and loss of vision in the right eye are severe impairments. (AR 18). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (AR 19).

The ALJ then assessed Plaintiff's RFC and concluded that he can perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[6] except:

---

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg

1   [Plaintiff] can stand and/or walk for six hours, and sit

2       for six hours, in an eight-hour workday with normal

3       breaks; can perform occasional postural maneuvers;

4       cannot climb ladders, ropes or scaffolds; cannot crawl;

5       and should have no exposure to dangerous machinery,

6       unprotected heights, dusts, fumes, or extremes of heat

7       or cold. [Plaintiff] is additionally limited to the

8       performance of jobs requiring only monocular vision.

9

10  (AR 19). At step four, the ALJ found that Plaintiff was capable

11  of performing his past relevant work as a sales representative,

12  which does not require the performance of work-related activities

13  precluded by Plaintiff's RFC. (AR 21). Accordingly, the ALJ found

14  that Plaintiff was not under a disability as defined by the Social

15  Security Act from January 31, 2010, through the date of the ALJ's

16  decision. (AR 22).

17

18                                **VI.**

19                          **STANDARD OF REVIEW**

20

21      Under 42 U.S.C. § 405(g), a district court may review the

22  Commissioner's decision to deny benefits. "[The] court may set

23  aside the Commissioner's denial of benefits when the ALJ's findings

24  are based on legal error or are not supported by substantial

25  evidence in the record as a whole." Aukland v. Massanari, 257 F.3d

26  _____

27  controls. To be considered capable of performing a full or wide range
    of light work, you must have the ability to do substantially all of these
28  activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); see

also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing

Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).


"Substantial evidence is more than a scintilla, but less than

a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v.

Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant

evidence which a reasonable person might accept as adequate to

support a conclusion." (Id.). To determine whether substantial

evidence supports a finding, the court must "'consider the record

as a whole, weighing both evidence that supports and evidence that

detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d

at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir.

1993)). If the evidence can reasonably support either affirming

or reversing that conclusion, the court may not substitute its

judgment for that of the Commissioner. Reddick, 157 F.3d at 720-

21 (citing Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453,

1457 (9th Cir. 1995)).


**VII.**

**DISCUSSION**


Plaintiff contends that the ALJ erred for the following three

reasons: (1) the ALJ erred in rejecting Plaintiff's testimony

regarding his subjective symptoms and functional limitations; (2)

the ALJ erred in the determination of Plaintiff's RFC; and (3) the

ALJ erred in relying on the VE's response to the ALJ's incomplete

hypothetical question. (Dkt. No. 21 at 2-14).

**A.   The ALJ's Reasons for Discrediting Plaintiff's Subjective Symptom Testimony Were Specific, Clear and Convincing**

Plaintiff asserted that he is unable to work due to lethargy and weakness from his sleep apnea and asthma.  (AR 266).  He suffers from continuous back pain and has limited range of motion due to his scoliosis and arthritis.  (AR 266, 277).  Plaintiff testified that because of his back and hip pain, he is unable to sit for more than thirty minutes before needing to move around.  (AR 35-36, 39-41; see id. 279).  He can walk for only four to five blocks before needing to rest.  (AR 36, 44; see id. 271).  He has difficulty bending, stooping and picking things up.  (AR 36, 271, 279).  The ALJ found Plaintiff's statements "not entirely credible insofar as they are not corroborated by the medical evidence of record and [Plaintiff's] reported and demonstrated activity level."  (AR 20).

**1.   Standards**

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis.  Trevizo v. Berryhill, 874 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014).  "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  Id. (emphasis in original)

(citation omitted). "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Id. (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. Trevizo, 874 F.3d at 678 (citation omitted); see also Smolen, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." Garrison, 759 F.3d at 1015 (citation omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider the following:

(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained

16

failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

_Ghanim v. Colvin_, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. _Burrell v. Colvin_, 775 F.3d 1133, 1137 (9th Cir. 2014); _Light v. Soc. Sec. Admin._, 119 F.3d 789, 792 (9th Cir. 1997). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. _Smolen_, 80 F.3d at 1284; _accord Burrell_, 775 F.3d at 1137. However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented. _Bray v. Comm'r of Soc. Sec. Admin._, 554 F.3d 1219, 1227 (9th Cir. 2009) (citation omitted).

Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." _Tommasetti v. Astrue_, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted); _see Brown-Hunter v. Colvin_, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.") (citation omitted). Although an ALJ's

interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

### 2. Factors Supporting The ALJ's Adverse Credibility Determination

The ALJ provided two specific, clear and convincing reasons to find Plaintiff's complaints of difficulties with maneuvering and exertion not entirely credible. (AR 20-21). These reasons are sufficient to support the Commissioner's decision.

#### a. Reported Symptoms Not Corroborated By Medical Record

The ALJ found Plaintiff not entirely credible because his reported symptoms were not corroborated by the medical evidence of record. (AR 20). The ALJ identified multiple medical records with sufficient specificity that contradicted Plaintiff's allegations of significant difficulties with maneuvering and exertion. (AR 20-21).

First, the ALJ found that Plaintiff's medical care was limited and intermittent. (AR 20). An "unexplained, or inadequately explained, failure to seek treatment may be the basis for an adverse credibility finding." Orn v. Astrue, 495 F.3d 625, 638 (9th Cir.

2007) (citation omitted); Social Security Ruling ("SSR") 16-3p,[7] at *9 (S.S.A. Oct. 25, 2017) ("if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, . . . [the Agency] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record"). While Plaintiff alleges an onset of disability as of January 1, 2010, the medical record is sparse prior to May 2011. (AR 20; see generally id. 309-462). Moreover, the ALJ noted significant gaps in Plaintiff's medical record. (AR 20-21) (no significant treatment records between May 2011 and January 2013, between June 2014 and January 2015, and after January 2015). While Plaintiff identifies a single October 2012 medical record (Dkt. No. 21 at 4), this record appears to be no more than a routine physical examination. (AR 309-11).

Second, the ALJ found inconsistencies between Plaintiff's testimony and the objective medical evidence. (AR 20-21). "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008); see SSR 16-3p, at *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may

---

[7] Social Security Rulings (SSRs) "do not carry the 'force of law,' but they are binding on ALJs nonetheless." Bray, 554 F.3d at 1224. They "reflect the official interpretation of the [Agency] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations." Id. (citation omitted).

have on the ability to perform work-related activities"). While a
May 2011 orthopedic examination found decreased range of motion in
Plaintiff's lumbar spine and right hip, he had full range of motion
in his right shoulder and right knee. (AR 20) (citing id. 393).
Further, a straight-leg-raising test was negative and Plaintiff
had full strength in his lower extremities. (AR 393). In a June
2013 examination, Plaintiff was in no acute distress, and he
demonstrated adequate gait and maneuvering ability. (AR 20)
(citing id. 416-18). While Plaintiff had reduced range of motion
in his lumbar spine, he had full range of motion in his cervical
spine, shoulders, elbows, wrists, hips, knees and ankles and a
straight-leg-raising test was negative. (AR 416-17). Moreover,
primary care records during May and June 2014 indicated that
Plaintiff had no significant functional limitations. (AR 21)
(citing id. 440-52). Indeed, during those visits, Plaintiff denied
fatigue, joint pain or swelling, muscle pain, cramps or weakness,
and limited range of motion. (AR 445, 447).

Plaintiff contends that the ALJ "cited to isolated pieces of
evidence, . . . yet failed to consider that the objective medical
evidence of record supported Plaintiff's testimony regarding his
subjective symptoms and functional limitations." (Dkt. No. 21 at
7-8). However, in support of this assertion, Plaintiff merely
reiterates that he was diagnosed with morbid obesity, severe
obstructive sleep apnea, degenerative disc disease, severe lumbar
spondylosis, stenosis and edema. (Id. at 7, 8-9). Other than
edema, the ALJ found all of these impairments to be severe. (AR
18). Plaintiff fails to identify any objective evidence, including

physical examination findings or diagnostic tests, that contradicts the evidence cited by the ALJ.

Plaintiff also contends that it was "improper for the ALJ to discredit Plaintiff's testimony based merely on a lack of corroborating objective evidence." (Dkt. No. 21 at 8). While the ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the claimant's allegations," Bray, 554 F.3d at 1227, the ALJ "must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record," SSR 16-3p, at *5 (emphasis added). Here, the ALJ did not reject Plaintiff's subjective symptoms because of a lack of evidence to support Plaintiff's allegations. Instead, the ALJ discredited Plaintiff's statements because they are inconsistent with the medical signs and laboratory findings in the record.

Finally, the ALJ noted Plaintiff's conservative treatment history. (AR 20-21). The Ninth Circuit has concluded that "evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted); see Tommasetti, 553 F.3d at 1039-40 (ALJ may properly infer that claimant's pain "was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program" and "responded favorably to conservative treatment"); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999), as amended (June 22,

1999) ("Meanel's claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received."). In May 2011, Plaintiff's orthopedic surgeon recommended only that Plaintiff consider lap band surgery. (AR 20) (citing id. 393). In June 2013, Plaintiff's primary care doctor merely increased Plaintiff's edema medication and recommended regular exercise and weight loss. (AR 20) (citing id. 313). While an orthopedic surgeon in January 2015 recommended that Plaintiff be evaluated by a spine surgeon, the record reflects no further treatment. (AR 21) (citing id. 459). "A claimant's subjective symptom testimony may be undermined by an unexplained, or inadequately explained, failure to follow a prescribed course of treatment." Trevizo, 871 F.3d at 679 (citation and alterations omitted).

The ALJ properly could find, on the basis of Plaintiff's inconsistent and conservative treatment history, that Plaintiff's testimony and statements regarding his difficulties with maneuvering and exertion were not entirely credible.

        b.   Reported Symptoms Inconsistent With Demonstrated Activity Level

The ALJ also found Plaintiff not entirely credible because his reported symptoms were inconsistent with his acknowledged daily activities. "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and

all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison, 759 F.3d at 1016.   Nevertheless, an ALJ properly may consider the claimant's daily activities in weighing credibility. Tommasetti, 533 F.3d at 1039.   If a claimant's level of activity is inconsistent with the claimant's asserted limitations, it has a bearing on credibility.   Garrison, 759 F.3d at 1016.

Here, the ALJ determined that despite Plaintiff's alleged disabling difficulties with maneuvering and exertion, he acknowledged engaging in daily activities, including self-care, housework, errands and social and leisure activities that were inconsistent with his alleged disabilities.   (AR 20).   Plaintiff testified that he walks his dog and is able to drive.   (AR 38-39). He is able to make breakfast, take out the trash, do laundry and dishes.   (AR 267-68).   He shops for groceries, prescriptions and household goods, attends church on a regular basis and is able to use public transportation.   (AR 269-70, 279).   The discrepancy between Plaintiff's alleged disabilities and his daily activities supports the ALJ's determination that Plaintiff is not entirely credible.

Plaintiff contends that the ALJ "did not elaborate on which specific activities conflicted with which part of Plaintiff's testimony."   (Dkt. No. 21 at 10).   To the contrary, the ALJ found that engaging in daily activities such as self-care, housework, walking, driving, using public transportation, shopping and social and leisure activities, to which Plaintiff acknowledged in his May

2013 Function Report, undermined his disabling limitations, including difficulties with maneuvering and exertion, that he claimed in his May 2013 Pain Questionnaire and to which he testified. (AR 20). The ALJ's finding is "sufficiently specific" for this Court to conclude that the ALJ rejected Plaintiff's testimony "on permissible grounds." Brown-Hunter, 806 F.3d at 493.

Plaintiff also contends that the ALJ did not explain "how Plaintiff's activities might be transferable to a work setting." (Dkt. No. 21 at 10). "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." Smolen, 80 F.3d at 1284 n.7. The ALJ properly found that Plaintiff's daily activities are inconsistent with Plaintiff's allegations of disabling limitations, and was not required to offer any further discussion of the daily activities. See Ghanim, 763 F.3d at 1163 ("ALJ may consider a range of factors in assessing credibility, including . . . prior inconsistent statements concerning the symptoms") (citation omitted).

     c.   The ALJ Provided A Germane Explanation For Rejecting Plaintiff's Spouse's Statement

Plaintiff contends that the ALJ improperly rejected the May 2013 statement of his wife, Idamary Galluccio. (Dkt. No. 21 at 11). "A germane explanation is required to reject lay witness

testimony." Leon v. Berryhill, 874 F.3d 1130, 1134 (9th Cir. 2017). Plaintiff's spouse's statement largely parroted Plaintiff's allegations regarding his subjective symptoms and functional limitations. (Compare AR 257-65, with id. 266-74). Indeed, Plaintiff acknowledges that his wife merely "corroborated" his allegations. (Dkt. No. 21 at 11). The ALJ reviewed Idamary Galluccio's statement, giving it "[l]imited weight . . . inasmuch as it essentially reiterates [Plaintiff's] subjective allegations, which are not fully corroborated by the medical evidence as articulated herein." (AR 21). Accordingly, the ALJ properly rejected Idamary Galluccio's statement. Leon, 874 F.3d at 1134 ("if an ALJ provided clear and convincing reasons for rejecting a claimant's subjective complaints, and lay testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting the lay witness testimony"); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

In sum, the ALJ offered clear and convincing reasons, supported by substantial evidence in the record, for his adverse credibility findings. Accordingly, because substantial evidence

supports the ALJ's assessment of Plaintiff's credibility, no remand is required.[8]

## B.    <u>The ALJ's RFC Assessment Is Supported By Substantial Evidence</u>

Plaintiff contends that the ALJ's RFC assessment failed to take into account Plaintiff's lumbar spondylosis and herniated discs with stenosis, sleep apnea and morbid obesity. (Dkt. No. 21 at 12-13; <u>see also</u> <u>id.</u> at 8-9). The Court disagrees.

"A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations." <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989) (citing 20 C.F.R. § 404.1545). An RFC assessment requires the ALJ to consider a claimant's impairments and any related symptoms that may "cause physical and mental limitations that affect what [he] can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In determining a claimant's RFC, the ALJ considers all relevant evidence, including residual functional capacity assessments made by consultative examiners, State Agency physicians and medical experts. 20 C.F.R.

---

[8] In his third argument, Plaintiff contends that the ALJ improperly relied on the VE's response to the ALJ's hypothetical question that did not include the functional limitations testified to by Plaintiff. (Dkt. No. 21 at 13-14). However, because the ALJ properly discredited Plaintiff's testimony and statements, he did not need to include them in his hypothetical question. <u>See</u> <u>Osenbrock</u>, 240 F.3d at 1165 ("It is . . . proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record."); <u>accord</u> <u>Britton v. Colvin</u>, 787 F.3d 1011, 1013 (9th Cir. 2015).

26

§§ 404.1545(a)(3), 416.945(a)(3); <u>see also</u> <u>id.</u> §§ 404.1513(c), 416.913(c).

The ALJ found that Plaintiff's lumbar spondylosis, herniated discs with stenosis, morbid obesity and sleep apnea were all severe impairments. (AR 18). Moreover, in assessing Plaintiff's RFC, the ALJ took into account Plaintiff's obesity, his limited range of motion in his lumbar spine and the x-rays and MRI that demonstrated degenerative changes at T12-L1 and L4-S1 with 2-3mm disc protrusions. (AR 20-21). Nevertheless, examinations in June 2013 and May and June 2014 demonstrated adequate gait and maneuvering abilities. (AR 20-21). While Dr. Sedgh opined that Plaintiff would be capable of medium work, the ALJ limited Plaintiff to light work in deference to Plaintiff's subjective symptoms that were not inconsistent with the objective evidence. (AR 20-21).

Plaintiff appears to confuse conditions with disabilities. For example, a "person can be depressed, anxious, and obese yet still perform full-time work." <u>Gentle v. Barnhart</u>, 430 F.3d 865, 868 (7th Cir. 2005). As the Seventh Circuit explained:

> Conditions must not be confused with disabilities. The social security disability benefits program is not concerned with health as such, but rather with ability to engage in full-time gainful employment. This point is obscured by the tendency in some cases to describe obesity as an impairment, limitation, or disability. It

is none of these things from the standpoint of the
disability program.  It can be the <u>cause</u> of a disability,
but once its causal efficacy is determined, it drops out
of the picture.  If the claimant for social security
disability benefits is so obese as to be unable to bend,
the issue is the effect of that inability on the
claimant's capacity for work.

<u>Id.</u> (citation omitted) (emphasis in original); <u>accord</u> <u>Cody v.</u>
<u>Colvin</u>, No. 16 CV 5664, 2017 WL 218802, at *3 (W.D. Wash. Jan. 19,
2017).

Other than his own subjective allegations, which the ALJ
properly discredited, Plaintiff does not demonstrate how his lumbar
spondylosis, herniated discs with stenosis, morbid obesity and
sleep apnea limits his ability to work.  <u>See</u> <u>Mayes v. Massanari</u>,
276 F.3d 453, 459 (9th Cir. 2001) ("It was [claimant's] duty to
prove that she was disabled.") (citing 20 C.F.R. § 404.1512(a));
<u>see also</u> <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1275 (9th Cir. 1990)
("The burden of establishing disability is . . . on the claimant,
who must prove that she is unable to return to her former type of
work.").  He cites to no medical evidence indicating that these
impairments, which the ALJ found to be severe, limit his functional
capacity more than the limitations found by the ALJ.  Accordingly,
the ALJ's RFC assessment is supported by substantial evidence.

Plaintiff contends that the ALJ failed to consider "the
symptoms associated with Plaintiff's obesity and its limiting

28

effects, individually and in combination with his other medical impairments, on his ability to perform physical and mental work-related activities, as required by SSR 02-1p." (Dkt. No. 21 at 9). To the contrary, the ALJ found that Plaintiff's morbid obesity was a severe impairment and considered Plaintiff's weight, including its impact on his ability to ambulate, in assessing the RFC. (AR 18, 21). Plaintiff has failed to identify any probative evidence of any additional functional limitations arising from his obesity that the ALJ overlooked. Burch v. Barnhart, 400 F.3d 676, 684 (9th Cir. 2005) ("Burch has not set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider.").

## VIII.

### CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: December 1, 2017

_____
/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE